FILED
October 21, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002169147

DOWNEY BRAND LLP
R. DALE GINTER (Bar No. 100784)
KELLY L. POPE (Bar No. 235284)
621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
dginter@downeybrand.com
kpope@downeybrand.com

Attorneys for Debtor
Best/Sonoma Gateway Partners

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEST/SONOMA GATEWAY PARTNERS,<br><br>Debtor. | Case No. 09-42211-A-11<br><br>Chapter Number: 11<br><br>**BEST/SONOMA GATEWAY PARTNERS' PLAN OF REORGANIZATION DATED OCTOBER 21, 2009** |

# ARTICLE I

## SUMMARY

This Plan of Reorganization under chapter 11 of the Bankruptcy Code proposes to pay creditors of Best/Sonoma Gateway Partners from future revenue, and to the extent necessary contributions from the Debtor's partners. This Plan provides for 2 classes of secured claims; 3 classes of unsecured claims; and 1 class of equity security holders. Unsecured creditors holding allowed claims will receive distributions, valued at 100 percent of Allowed Claims. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should

read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.

## ARTICLE II

## DEFINITIONS

For the purposes of the Plan, the following terms shall have the meanings specified below. Any term used in the Plan that is not defined herein, but that is defined in the Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Code or the Bankruptcy Rules.

2.01 "Administrative Claim" means any Claim entitled to treatment as a Priority Claim under section 507(a)(2) of the Code.

2.02 "Allowed Administrative Claim" means all or any portion of an Administrative Claim that has either been (i) allowed by a Final Order or (ii) has not been objected to within the time period established by the Plan or by an order of the Bankruptcy Court.

2.03 "Allowed Claim" means a Claim, other than an Administrative Claim, as to which:

(a) A proof of the claim or interest was timely filed, or is deemed filed under applicable law or by reason of an order of the Bankruptcy Court; and

(b) Such Claim is not a Disputed Claim, or, if a Disputed Claim, such Claim has been allowed in whole or in part by a Final Order, provided that any such Claim shall be an Allowed Claim only to the extent stated in any such Final Order. Unless otherwise provided in the Plan or ordered by the Bankruptcy Court, no distributions shall be made under the Plan in respect of the disputed portion of any Disputed Claim until there is a Final Order specifying the allowed amount of such Claim. No disputed portion of any Claim shall be considered as an Allowed Claim if an objection to the allowance of such Claim is made by the Debtor or another party in interest within the time set by the Plan or the Bankruptcy Court, and such objection to Claim has not been denied by a Final Order of the Bankruptcy Court.

2.04 "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and any amendments thereof.

2.05 "Bar Date" means the last day for filing proofs of claim against the Debtor as

provided by the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines, filed in the Case on October 16, 2009.

2.06 "Case" means the Chapter 11 bankruptcy reorganization case of the Debtor, designated as Case No. 09-42211-A-11 pending before the Court.

2.07 "Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, as defined in § 101(5) of the Code.

2.08 "Claimant" or "claimant" means the holder of a Claim against the Debtor or the Estate.

2.09 "Class" means a grouping of substantially similar Claims or Interests as designated in Article 6 of this Plan.

2.10 "Code" means the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, and any amendments thereof.

2.11 "Confirmation" means the entry of an order by the Court confirming the Plan at or after a hearing pursuant to § 1129 of the Code.

2.12 "Confirmation Date" means the date upon which Confirmation occurs.

2.13 "Court" means the United States Bankruptcy Court for the Eastern District of California, Sacramento Division, before which the Case is pending or, in the event such court ceases to exercise jurisdiction over the Case, such court or adjunct or unit thereof that exercises jurisdiction over the Case in lieu of the United States Bankruptcy Court for the Eastern District of California, Sacramento Division.

2.14 "Creditors" means all persons and entities with Claims against the Debtor or the Estate.

2.15 "Debtor" means Best/Sonoma Gateway Partners.

2.16 "Distribution(s)" means the property (including payments) required by the Plan to be provided to the holders of Allowed Claims.

2.17 "Effective Date" shall be the eleventh business day following the date of entry of the Order of Confirmation. But if a stay of the Order of Confirmation is in effect on that date, the

Effective Date will be the first business day after that date on which no stay of the Order of Confirmation is in effect, provided that the Order of Confirmation has not been vacated.

2.18 "Estate" means the bankruptcy estate created upon commencement of the Case pursuant to section 541(a) of the Code.

2.19 "Final Order" means an order of the Court that has been entered and either:

(a) The time for appeal from such entered order has expired with no appeal having been filed timely; or

(b) If any appeal is timely filed, that there is no stay pending appeal in place that would stay the effectiveness of such order.

2.20 "Lawsuit" means the lawsuit that River City Bank filed against the Debtor and all of its Partners on or about July 23, 2009 in Sonoma County Superior Court, case number SW 245533.

2.21 "Order of Confirmation" means the order of the Court confirming the Plan pursuant to section 1129 of the Code.

2.22 "Partners" means Carl E. Best, as Trustee of the Carl & Janet Best Trust; Scott R. Best; John R. Copeland; Matthew A. Johnson; Terry A. Johnson, Trustee of the Johnson Family Trust; Michael W. Metzger; Vernon J. Park, Jr., Trustee of the Park Family Trust; James M. Shea, Trustee of the Shea Family Trust; Wesley F. and Julie A. Wood, Trustees of the Wood Family Trust., Peter J. Raffetto and Susan L. Raffetto, of the Raffetto Family Trust; and Best Development Group in their capacity as the Debtor's general partners.

2.23 "Petition Date" means the date on which the Debtors filed their chapter 11 petition with the Clerk of the Court, October 13, 2009.

2.24 "Plan" or "Plan of Reorganization" means this Plan of Reorganization in its present form, as it may be amended, modified, or supplemented.

2.25 "Prime", "Prime Rate" or "Prime Interest Rate" means the Wall Street Journal Prime Interest Rate as published in the Wall Street Journal as of the Confirmation Date. By way of illustration only, as of October 21, 2009 the Prime interest rate is 3.25%.

2.26 "Priority Claim" means any claim entitled to priority treatment pursuant to section

507 of the Code, except for Administrative Claims and Tax Claims.

 2.27 "Property of the Estate" has the meaning provided by section 541 of the Code.

 2.28 "Reorganized Debtor" means the Debtor as reorganized subsequent to the Effective Date.

 2.29 "Secured Claim" means a Claim that is secured by a lien on Property of the Estate.

 2.30 "Shopping Center" means the Debtor's commercial real property located at 6258 Commerce Boulevard, Rohnert Park, CA 94923, commonly known as the Sonoma Gateway Shopping Center.

 2.31 "Shopping Center Note" means the promissory note dated July 21, 2005 in the original principal amount of $7,350,000.00, and thereafter increased by $150,000.00 to a maximum loan amount of $7,500,000.00, identified on River City Bank's records as Loan No. 4694534619. The Shopping Center Note is secured by a deed of trust on the Shopping Center.

 2.32 "Tax Claim" means a Claim entitled to priority treatment pursuant to section 507(a)(8) of the Code.

 2.33 "Unsecured Claim" means a Claim that is not secured by any Lien on Property of the Debtor or Property of the Estate.

 2.34 "Vacant Parcel" means the Debtor's vacant commercial land located at 6277 Commerce Boulevard, Rohnert Park, CA 94928.

 2.35 "Vacant Parcel Note" means the promissory note dated October 7, 2009 for a principal amount of $400,000.00 payable to the Peter and Janet Geremia Family Trust (the "Geremia Trust"). The Vacant Parcel Note is secured by a deed of trust on the Vacant Parcel.

**ARTICLE III**

**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

 3.01 <u>Unclassified Claims</u>. Pursuant to section §1123(a)(1) of the Code, Administrative Claims and Tax Claims are not classified under the Plan.

 3.02 <u>Administrative Claims</u>. Each holder of an Allowed Administrative Claim will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed

upon by the holder of the Claim and the Debtor. If an Administrative Claim has not been approved by the Court as of the Effective Date, the Claim shall be paid as soon as the Court approves such Claim.

   3.03 <u>Tax Claims</u>.  Each holder of a priority Tax Claim will be paid on account of such Claims, in accordance with section 1129(a)(9)(C) of the Code, in equal quarterly installments over a period not exceeding five years after the Petition Date.  Payment of Allowed Tax Claims shall include payment of interest at the rate applicable under non bankruptcy law to such Claims. Debtor believes there are no Tax Claims.

   3.04 <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

# ARTICLE IV

## CLASSIFICATION OF CLAIMS AND INTERESTS

   4.01 <u>Class 1</u>.  All Priority Claims (except Administrative Claims under § 507(a)(2), and priority Tax Claims under § 507(a)(8)).  Debtor is not aware of any Priority Claims in this Chapter 11 Case.

   4.02 <u>Class 2</u>.  The Secured Claim of River City Bank secured by a deed of trust against the Shopping Center.  In its Lawsuit, River City Bank asserts that as of July 22, 2009, approximately $6,734,029.35 was due under the Shopping Center Note.

   4.03 <u>Class 3</u>.  The Secured Claim of the Peter and Janet Geremia Family Trust secured by a deed of trust against the Vacant Parcel in the amount of $400,000.00.

   4.04 <u>Class 4</u>.  All Unsecured Claims in the amount of $1,000.00 or less.

   4.05 <u>Class 5</u>.  The unsecured, deficiency Claim, if any, of River City Bank under the Shopping Center Note.

   4.06 <u>Class 6</u>.  All Unsecured Claims of Creditors which are not Administrative Claims, Tax Claims or are not otherwise separately classified.

   4.07 <u>Class 7</u>.  Equity interests of the Debtor.

# ARTICLE V

# TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and interests shall be treated as follows under this Plan:

5.01    Class 1. Allowed Priority Claims, if any, are impaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, in 4 quarterly payments commencing on the first day of the first calendar quarter subsequent to the Effective Date. Interest shall begin accruing at the Prime Rate plus 1% on the unpaid amount of Class 1 Claims on the Effective Date. Each quarterly payment shall be for one-fourth (1/4) of the principal amount of the Class 1 Claim plus interest accrued to the date of the payment. The amount of this Class is estimated by the Debtor to be zero.

5.02    Class 2. Class 2 is impaired by this Plan. The Class 2 Secured Claim of River City Bank will be paid in full pursuant to the following terms. The Class 2 Claim will remain a first priority lien on the Shopping Center and will accrue interest commencing on the Effective Date at the Prime Rate plus 1%. The Class 2 Claim will be amortized over 30 years with equal monthly payments commencing on the first day of the first calendar month subsequent to the Effective Date. The Class 2 Claim will mature 60 months after the Effective Date. The Reorganized Debtor will have the option to extend the maturity of the Class 2 Claim for an additional 60 month period with monthly payments amortized over 25 years, accruing interest at the Prime Rate (determined as of 60 months after Effective Date rather than on the Confirmation Date) plus 1%.

5.03    Class 3. Class 3 is impaired by this Plan. The Class 3 Secured Claim of the Geremia Trust will be paid in full pursuant to the following terms. The Class 3 Claim will remain a first priority lien on the Vacant Parcel and will accrue interest commencing on the Effective Date at the Prime Rate plus 1%. The Class 2 Claim will be amortized over 30 years with equal monthly payments commencing on the first day of the first calendar month subsequent to the Effective Date. Class 3 Claim will mature 48 months after the Effective Date.

5.04    Class 4. Class 4 is unimpaired by this Plan. The Class 4 Claims will be paid in full, in cash, on the Effective Date.

5.05 <u>Class 5</u>. Class 5 is impaired by this Plan. The Class 5 Unsecured Claim of River City Bank shall be treated the same as River City Bank's Class 2 Secured Claim. That is, the Class 5 Claim will accrue interest commencing on the Effective Date at the Prime Rate plus 1%. The Class 5 Claim will be amortized over 30 years with equal monthly payments commencing on the first day of the first calendar month subsequent to the Effective Date. The Class 5 Claim will mature 60 months after the Effective Date. The Reorganized Debtor will have the option to extend the maturity of the Class 5 Claim for an additional 60 month period with monthly payments amortized over 25 years, accruing interest at the Prime Rate (as of 60 months after Effective Date rather than on the Confirmation Date) plus 1%.

5.06 <u>Class 6</u>. The Class 6 Claims are impaired. The Class 6 Unsecured Claims will be paid in full, in cash, over 24 months in quarterly payments commencing on the first day of the first calendar quarter subsequent to the Effective Date. Interest shall begin accruing at the Prime Rate plus 1% on the unpaid amount of Class 6 Claims on the Effective Date. Each quarterly payment shall be for one-eighth (1/8) of the principal amount of the Class 6 Claim plus interest accrued to the date of the payment.

5.07 <u>Class 7</u> is unimpaired under this Plan. The Partners shall retain their respective partnership interests in the Debtor.

5.08 <u>Cramdown</u>. In the event that any Impaired Class entitled to vote on the Plan does not accept the Plan in accordance with section 1129(a) of the Code, the Debtor shall request that the Court confirm the Plan in accordance with section 1129(b) of the Code.

## ARTICLE VI

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.01 <u>Disputed Claim</u>. A Disputed Claim is a Claim that has not been allowed or disallowed by a Final Order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated.

6.02 <u>Delay of Distribution on a Disputed Claim</u>. No distribution will be made on account of a Disputed Claim unless such Claim is allowed by a Final Order.

6.03     Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a Disputed Claim with court approval and compliance with Rule 9019 of the Bankruptcy Rules.

## ARTICLE VII

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01     Assumed Executory Contracts and Unexpired Leases.  The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date:

(a)     The Commercial Lease between Nelson Decaires and the Debtor under which Nelson Decaires leases Space # 338 at the Shopping Center for tenant Digicom Wireless.

(b)     The Commercial Lease between Greg and Brenda Del Secco and the Debtor under which Greg and Brenda Del Secco lease Space # 308 at the Shopping Center for tenant Del Secco's Gelato.

(c)     The Commercial Lease between Joseph and Bora Kim and the Debtor under which Joseph and Bora Kim lease Space # 302 at the Shopping Center for tenant Stilx Restaurant.

(d)     The Commercial Lease between William Maushardt and the Debtor under which Will Maushardt leases Space # 356 at the Shopping Center for tenant Bear, Buddies & Toys Boutique.

(e)     The Commercial Lease between Fernando and Claudia Olvera and the Debtor under which Fernando and Claudia Olvera lease Space # 174 at the Shopping Center for tenant Mr. Chile Restaurant.

(f)     The Commercial Lease between Daniel Peterson and the Debtor under which Daniel Peterson leases Space # 338 at the Shopping Center for tenant Express Tax Service.

7.02     The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 7.01 above, or before the date of the Order of Confirmation, upon the Effective Date.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the Effective Date.

# ARTICLE VIII

# MEANS FOR IMPLEMENTATION OF THE PLAN

8.01 <u>Management of the Debtor</u>. The Debtor will continue to be managed by its current managing partner, Carl E. Best. Pursuant to Code § 1123(a)(5)(A), the Debtor shall retain ownership and control over all Property of the Estate, including the Shopping Center and the Vacant Parcel.

8.02 <u>Funding the Plan</u>. The funds necessary for the implementation of this Plan will be derived from the revenues generated by the operation of the Property of the Estate, including rental income generated from all current and future commercial leases on the Shopping Center ("Rental Revenue"). At the present time the Rental Revenue is not sufficient to service the River City Bank debt encumbering the Shopping Center. However, it is anticipated that the Shopping Center will be fully leased within two to three years at which time it will be able, or nearly able, to pay the debt service on the Shopping Center.

The Debtor is also attempting to sell a portion of the Shopping Center to national retailer. Such a sale would substantially pay the Class 2 Secured Claim of River City Bank. However, the Bank will need to consent to the release of its lien on any portion of the Shopping Center that is sold.

The Vacant Parcel is a highly desirable pad with a "drive through" approval that is well suited to the development of a fast food restaurant. The Vacant Parcel presently has about $500,000 in equity. It is anticipated that the Vacant Parcel will either be developed or sold in the next two to three years. The proceeds of any sale would be used first to pay the Geremia Trust's Secured Claim with any remaining proceeds being used as additional capital for the conduct of the Reorganized Debtor's business.

The Debtor's general partners will remain personally liable as general partners for all debts of the Debtor, including, but not limited to, all Claims dealt with under this Plan. To the extent that the Reorganized Debtor's revenues are insufficient to pay its obligations the Partners will provide the funds to the Reorganized Debtor to enable it to meet all of its obligations.

8.03 <u>Modification of Loans</u>. Pursuant to Code § 1123(a)(5)(H), the Shopping Center

Note and the Vacant Parcel Note shall be modified as described in Article V of this Plan.

  8.04 <u>Distributions</u>. The Debtor shall make all Distributions in accordance with the Plan.

  8.05 <u>Reserve for Disputed Claims</u>.

    (a) On and after the Effective Date, the Distributions reserved for the holders of Disputed Claims shall not be distributed but shall be held by the Debtor in a segregated account (the "Disputed Claims Reserve") for the benefit of the holders of the Disputed Claims entitled thereto under the Plan. Except to the extent that the Court shall have estimated under section 502(c) of the Code or otherwise determined that a good and sufficient reserve for Disputed Claims is less than the full amount thereof, there will be deposited into the Disputed Claims Reserve an amount of cash which would have been distributed on account of all Disputed Claims if all Disputed Claims were allowed in the full amount claimed by the holders thereof.

    (b) At such time as a Disputed Claim becomes an Allowed Claim, the Distribution which would have been disbursed had the Disputed Claim been an Allowed Claim on the Effective Date shall be made by the Debtor to the holder of such Allowed Claim within thirty days.

  8.06 <u>Execution and Delivery of Documents</u>. The Debtor is authorized and ordered to execute and deliver documents and instruments as are necessary or appropriate to promote and implement the Plan or to carry out the purposes of the Plan.

  8.07 <u>Objections to Claims and Estimation of Claims</u>. The Debtor shall retain authority on and after the date of Confirmation to file objections to allowance of any Claim in the Case, and the Court shall retain jurisdiction on and after the date of Confirmation to hear all such objections. In addition, the Debtor shall retain authority on and after the date of Confirmation to file a motion for an order estimating the Allowed Amount of any Claim in the case, for the purpose of determining the amount to be held in the Disputed Claims Reserve under section 8.05 of this Plan.

  8.08 <u>Claim Bar Dates</u>. The last day for filing proofs of claim in the Case shall be the Bar Date fixed by the Court before Confirmation of the Plan, except for Administrative Claims.

The deadline for filing and serving Administrative Claims shall be the date sixty days after the Effective Date, except that Administrative Claims for compensation and reimbursement of professional persons employed pursuant to Court order in the Case may be brought at any time before the closing of the Case.

  8.09 <u>Retention and Enforcement of Claims</u>.  Pursuant to section 1123(b)(3) of the Code, the Debtor may on and after the date of Confirmation maintain and enforce any Claims of the Estate.

## ARTICLE IX

## DISCHARGE, DISCHARGE INJUNCTION AND REVESTING

  9.01 <u>Discharge.</u>  On the confirmation date of this Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code.  The Debtor will not be discharged from any debt imposed by this Plan.

  9.02 <u>Discharge Injunction.</u>  Pursuant to section 524 of the Code, the Debtors' discharge pursuant to the Plan under section 1141 of the Code operates as an injunction against the commencement or a continuation of an action, the employment of process, or an act, to collect, recover, or offset any discharged Debt as a personal liability of the Debtors, or either of them, whether or not discharge of such Debt is waived.

  9.03 <u>Injunction Against Pursuit of the Partners.</u>  **So long as the Reorganized Debtor is performing its obligations under this Plan no party may pursue any or all of the Partners for the payment of an obligation of the Reorganized Debtor that is provided for in this Plan.**  If the Reorganized Debtor is 30 days or more delinquent in paying any Claim dealt with by this Plan, the Claimholder may give the Reorganized Debtor 30 days written notice of the delinquency.  If the Reorganized Debtor does not cure the delinquency within 30 days of the written notice, this Injunction shall be terminated and the Claimholder may directly pursue any or all of the Partners.

  9.04 <u>Revesting.</u>  Upon the Effective Date, all property of the Debtor shall be revested in the Reorganized Debtor free and clear of all claims, liens and interests except as provide for in

this Plan.

## ARTICLE X

## DECLARATORY JUDGMENT AGAINST THE PARTNERS

10.01  Each of the Partners is liable to the Debtor and, as of the Effective Date, to the Reorganized Debtor for all of the debts of the Debtor and Reorganized Debtor, including the Claims dealt with by this Plan.  Claims against the Partners for contributions are property of the Estate until the Effective Date.  Subsequent to the Effective Date claims against the Partners are the property of the Reorganized Debtor.

10.02  As part of the Confirmation Order each of the Partners agrees to the entry of a declaratory judgment against them which will obligate each Partner to pay such Partners' share of any capital call properly made by the Managing Partner.  In the event that any Partner fails to fund his, her, their or its share of the capital call, the Reorganized Debtor may return to this Court to seek the entry of a money judgment against such Partner for such Partners' unpaid share of any capital call.

10.03  In the event that any Partner files bankruptcy or otherwise cannot be compelled to fund such Partner's share of any capital call, the remaining partners shall, in proportion to their ownership of the Reorganized Debtor, fund the defaulting Partner's share.

## ARTICLE XI

## GENERAL PROVISIONS

11.01  <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

11.02  <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

11.03  <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

11.04  <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law

(including the Code or the Bankruptcy Rules), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

11.05  Interpretation. To the extent that the terms of the Plan are inconsistent with the terms of any agreement or instrument concerning any Claim or Interest, or any other matter, the terms of the Plan shall control.

11.06  Amendments. The Plan may be modified by the Debtor as provided for by Code § 1127. Additionally, at any time before thirty days after the Effective Date, the Debtor may seek Court authorization to remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Order of Confirmation, or effect such other changes, modifications, or amendments as may be necessary to carry out the purposes and intent of the Plan.

11.07  Retention of Jurisdiction. Following Confirmation of the Plan, the Court shall retain and have all authority and jurisdiction as is allowed under the Code and other applicable law to enforce the provisions, purposes and intent of this Plan, including, without limitation, matters or proceedings that relate to:

(a) Allowance, disallowance, reconsideration, estimation, compromise, settlement, adjustment, classification, treatment or liquidation of Claims or interests and objections thereto;

(b) The assumption, assignment or rejection of any executory contract or unexpired lease, or any agreement, lease, contract, sale, purchase, assignment or other action taken with regard to property of the Debtor or the Estate;

(c) The right, title, or interest of the Debtor or the Estate in any property;

(d) Any right, power, action or duty of the Debtor under this Plan;

(e) Any determination or estimation necessary or appropriate under section 505 of the Bankruptcy Code or other determination or estimation relating to tax returns filed or to be filed by the Debtor;

(f) Requests for payment of Claims entitled to priority under section 507(a) of the Code, or to borrow funds, including compensation and reimbursement of expenses for professionals, to the extent Court approval is required under this Plan or the Confirmation Order;

(g) Resolution of controversies and disputes, including the correction of any mistake, defect or omission regarding interpretation or enforcement of this Plan, the Confirmation Order, and the agreements referred to herein or executed in contemplation of or to implement this Plan;

(h) Implementation of the provisions of this Plan and entry of orders in aid of Confirmation of this Plan including, without limitation, borrowing orders and appropriate orders to protect the Estate from Creditor action pursuant to section 105 of the Bankruptcy Code;

(i) Modification of this Plan pursuant to § 1127 of the Code;

(j) Adjudication of any causes of action including, without limitation, avoidance actions brought by the Debtor; or, any causes of action the Reorganized Debtor might bring against its Partners pursuant to Article X of this Plan.

(k) Such other matters as may be provided under the Code, this Plan, the Order of Confirmation or other applicable law; and

(l) Entry of a final decree closing this Chapter 11 case, including provisions for injunctive relief as may be equitable and consistent with Bankruptcy Rule 3022.

(m) Entry of any order or judgment against any of the Partners that may be required to compel such Partner to fund his, her or its share of any capital call that is necessary to enable the Reorganized Debtor to meet its obligations.

DATED: October 21, 2009         BEST/SONOMA GATEWAY PARTNERS

By: *[signature]*
CARL E. BEST
Managing Partner,
Best/Sonoma Gateway Partners